UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KEELY MICHALAK, Individually and as
Next Friend of R.Z., a minor,

     Plaintiff,

v.

ST. CHARLES COMMUNITY SCHOOLS
and AARON HEMGESBERG,

     Defendants.

_____/

Case No. 25-
Hon.

THE MASTROMARCO FIRM
VICTOR J. MASTROMARCO, JR. (P34564)
KEVIN J. KELLY (P74546)
Attorneys for Plaintiff
1024 N. Michigan Avenue
Saginaw, Michigan 48602
(989) 752-1414
vmastromarco@mastromarcofirm.com
kkelly@mastromarcofirm.com

_____/

## **PLAINTIFF'S COMPLAINT & DEMAND FOR TRIAL BY JURY**

     NOW COMES Plaintiff, KEELY MICHALAK, Individually and as Next Friend of R.Z., a minor, by and through her attorneys, THE MASTROMARCO FIRM, and hereby complains against Defendants, ST. CHARLES COMMUNITY SCHOOLS and AARON HEMGESBERG, stating as follows:

## COMMON ALLEGATIONS

1.      That Plaintiff Keely Michalak is a resident of the County of Saginaw, State of Michigan and is otherwise domiciled in the State of Michigan.

2.      That Plaintiff is the mother and Next Friend of R.Z., a minor, who also resides in the County of Saginaw, State of Michigan and is otherwise domiciled in the State of Michigan.

3.      That Defendant St. Charles Community Schools is a school district and public corporation operating within the County of Saginaw, State of Michigan and is otherwise domiciled in the State of Michigan.

4.      That Defendant Aaron Hemgesberg is a resident of the County of Saginaw, State of Michigan and is otherwise domiciled in the State of Michigan.

5.      That the amount in controversy exceeds the sum of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00), exclusive of costs, interest, and attorney fees.

6.      That this Honorable Court has jurisdiction over Plaintiff's federal law claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

7.      That during the 2024-2025 school year, Plaintiff's minor, R.Z. attended St. Charles Community Middle/High School and was in the eleventh grade.

8.      That at the same time, Defendant Hemgesberg was the Junior Varsity

Football Coach and also worked at the Middle/High School as a special education teacher.

9.    That Defendant Hemgesberg coached R.Z. when R.Z. played on the Junior Varsity Football team.

10.    That Defendant Hemgesberg has a history of engaging in disturbing, unlawful, and inappropriate behavior towards minors and women.

11.    That for example, Defendant Hemgesberg became intoxicated at a September 21, 2024 football fundraiser event.

12.    That during said event, Defendant Hemgesberg text messaged two individuals under the age of 21:

> Where the fuck are you to when you're Favorite head coach she's a ride somewhere.  [Name redacted] get your ass up here and have a drink with me.  [Name redacted] get your ass up here and have a drink with me.
>
> I don't give a fuck if you're under age you got 20 bucks in your wallaet come up and donate it to Saint Charles football!
>
> *    *    *
>
> Hey, don't forget my tongue will put any boyfriend down to the count.  I get on that klit and nobody can handle me.

13.    That after one of the individuals who received the text, jokingly suggested Defendant Hemgesberg have a couple more drinks, Defendant Hemgesberg continued:

> You know I will!  I'm like the fucking energizer bunny.  I keep going, brother.

You put a pussy in my face.  I'm gonna lick for hours.

14.     That in said text messages, Defendant Hemgesberg exhibiting troubling behaviors, including encouraging underage individuals to drink alcohol, suggesting he would give alcohol to underage individuals to drink at a school fundraising event, and engages in sexually explicit conversations with underage individuals.

15.     That Defendant Hemgesberg had also acted inappropriately towards Plaintiff.

16.     That for example, on October 14, 2023, Plaintiff attended a football fundraising event.

17.     That at the event, Defendant Hemgesberg also appeared intoxicated and as Plaintiff was leaving the event, Defendant Hemgesberg grabbed her by the arm, pulled her in for an unwanted hug, and stated, "You know I call you the hot mom, right?" or words to that effect.

18.     That while Defendant Hemgesberg was at the September 21, 2024 fundraising event, referenced above, Defendant Hemgesberg also messaged Plaintiff through a school-related application, the "BAND app," soliciting Plaintiff to come out and have drinks with him, because he loves having drinking with her and her husband; Plaintiff and her husband have never gone out drinking with Defendant Hemgesberg.

19.     That while Plaintiff thought the above-referenced interactions were odd

and inappropriate, Plaintiff was unaware of how Defendant Hemsgeberg was sexually harassing her to her son, R.Z.

20.    That in December 2024, Plaintiff learned from other parents and students that Defendant Hemgesberg had been making sexually explicit comments about Plaintiff to her son.

21.    That at that time, Plaintiff learned that Defendant Hemgesberg would say things to R.Z., such as "what I would do to her when I get the chance," referring to Plaintiff as "hot," and stating Plaintiff had a nice "ass" and "perky tits."

22.    That on or about January 8, 2024, Plaintiff attended a Board of Education meeting and made a public statement.

23.    That in Plaintiff's public statement, she specifically requested that matters be placed as an agenda item on a future Board meeting and indicated that she would be "shedding light on sexual harassment by a staff member, misplaced fundraising funds and harassment."

24.    That Plaintiff's reference to sexual harassment was made in the presence of both of the School District's Title IX Coordinators, who took no action to investigate the report of sexual harassment.

25.    That following the meeting, Shannon Grunas, Administrative Assistant to the Superintendent, approached Plaintiff and asked for a copy of her statement for Interim Superintendent Sarah Kettelhohn.

26.     That on or about January 9, 2025, Plaintiff emailed a copy of her statement to Ms. Grunas.

27.     That on or about January 16, 2025, Defendant St. Charles Community Schools made a change to School Board Policy 4104 that related to Title IX; however, it is not clear that the Board of Education had approved any such change.

28.     That on or about January 22, 2025, Plaintiff attended another Board of Education meeting.

29.     That at said meeting, Plaintiff made another public statement referencing the sexual harassment:

> Two weeks ago . . . I spoke on how my son and I have been bullied by the staff and their spouses in an attempt to silence us.  I mentioned sexual harassment by a staff member and misplaced fundraising money. After the board meeting, I was asked for a copy of my letter for review. I had only assumed this meant that someone would call and help assist me in the issues I brought to light.  Nothing but silence is what I got in return for making you aware of some serious issues within this broken administration.

30.     That on or about January 24, 2025, Plaintiff called the school and spoke with Tom White, Middle/High School Principal and Title IX Coordinator.

31.     That during said conversation, Plaintiff reported that she has been sexually harassed by Defendant Hemgesberg; Mr. White, however, did not take any action to investigate or remediate the sexual harassment.

32.     That on or about January 29, 2025, Plaintiff wrote the Board of Education, in part, the following:

Two nights ago the JV football coach who has said very sexually explicit things about me to my son and other football players, cornered my son in the weight room. . . . Aaron Hemgesberg should be fired immediately for his sexual misconduct and for harassing my son. My son stated he had to put headphones on to finish his work out because Aaron would not leave him alone. . . . Two hours later I received a private message from Aaron. When I didn't answer he called my son. Telling him he spoke with Ashley and she's going to put him in the Varsity position and to just tell your mom it's alright and to let the Kacey thing go.

33.     That the "Kacey thing" referred to Plaintiff's opposition to the School District's December 2024 decision to terminate the Varsity Football Coach.

34.     That Plaintiff's January 29, 2025 email ended, in part, by stating, "Please I am begging you as a mother of a son who is being harassed by these people to make it stop."

35.     That on or about January 31, 2025, a Board of Education member made a public post on Facebook, attacking Plaintiff and others for starting an advocacy group on Facebook.

36.     That the post spread around the St. Charles community quickly, including at the Middle/High School.

37.     That said Facebook post garnered over one hundred comments from community members, many of which attacked Plaintiff.

38.     That said Facebook post was retaliation over Plaintiff's prior and continued reports of sexual harassment.

39.     That on or about January 31, 2025, Plaintiff's son, R.Z., contacted his

mother requesting he be taken out of school, because other students had begun harassing him about the Facebook post.

40.     That as result and also on or about January 31, 2025, Plaintiff reported the retaliatory Facebook post to Mike Roth, President of the Board of Education.

41.     That on or about February 5, 2025, Plaintiff and her husband attended a Board of Education meeting.

42.     That at said meeting, Plaintiff's husband spoke and stated, in part:

> Have any of you had a wife/mother/daughter/sister or niece experience sexual harassment?  If the answer is no, consider yourself lucky you have not had to watch how this affects your loved one.  Especially when they ask the people who are supposed to help them over and over again just to be retaliated against.  My wife had no intentions ever of handling the private details of the sexual harassment or personal harassment against her and her son in public.  She has been to 3 meetings, spoke to the principal twice and emailed letters to the board.  All she wanted was someone to contact her and address the situation.  What she got in return blows my mind.

43.     That in response to Plaintiff's husband's statements, the Board member who made the Facebook post lashed out at him, yelling at him, claiming Plaintiff had no proof, and that St. Charles was tired of dealing with Plaintiff's lies, further evidencing retaliation.

44.     That despite the multiple reports of sexual harassment, St. Charles Community Schools failed to conduct an investigation or take any remedial action.

45.     That on or about February 19, 2025, in further retaliation for Plaintiff's reports of sexual harassment, a teacher publicly attacked Plaintiff at a Board of

Education meeting.

46.    That on or about February 19, 2025, it appears that Interim Superintendent Kettelhohn began an informal investigation into the sexual harassment allegations, by questioning a student who played football without notice to his parents or guardians.

47.    That said student reported to Interim Superintendent Kettelhohn that Defendant Hemgesberg did in fact make sexually explicit statements regularly about Plaintiff, including reporting Defendant Hemgesberg had stated he wanted to bend Plaintiff over a desk and have his way with her to a number of student-football players.

48.    That on or about February 20, 2025, Interim Superintendent Kettelhohn questioned Defendant Hemgesberg.

49.    That on or about February 21, 2025, Plaintiff contacted the Saginaw County Sheriff's Office to make a report regarding Defendant Hemgesberg's sexual harassment.

50.    That on or about March 7, 2025, Plaintiff obtained a copy of the police report regarding her prior report to the Sheriff's Office.

51.    That in said report, it indicates that Defendant Hemgesberg reported to law enforcement officers that Interim Superintendent Kettelhohn advised him that Plaintiff had filed a report regarding him wanting to bend her over a table.

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

52.    That Plaintiff had not made that claim and did not know about that statement until she heard from the student-football player who had reported the statement to Superintendent Kettelhohn.

53.    That on or about March 13, 2025, Plaintiff emailed Superintendent Kettelhohn, sending a screenshot of the police report and asked for any written report Defendant Hemgesberg referenced; Superintendent Kettelhohn responded, "I do not have a written complaint."

54.    That despite the fact that Plaintiff had made multiple reports of sexual harassment, no action was taken to remediate the now corroborated sexual harassment.

55.    That on or about April 23, 2025, Plaintiff filed a formal Title IX complaint with St. Charles Community Schools.

56.    That with her formal complaint, Plaintiff submitted several statements, including her own statement.

57.    That Plaintiff's statement related the incidents involving Defendant Hemgesberg occurring on October 14, 2023 and September 21, 2024 along with the information she heard:

> Towards the end of 2024, it was brought to my attention that Aaron has made multiple sexual comments about me and my body. I was told that not only did he say these things to follow parents he said them to the football players including my 16 year old son. His comments included, "What I would do to her when I get the chance." He said that I am "hot" and that I have a nice "ass" and "perky tits."

I have gone through the school to deal with this matter with nothing but retaliation, harassment and bullying on their end.

58.     That Plaintiff also submitted a statement made by the football player,

who Superintendent Kettelhohn interview, J.L. in which said student reported:

I, [name redacted] overheard Aaron J.V. Coach say he would bend [R.Z.'s] mom (Keely) over a desk and bang her right there and then said if he was with her there would be plenty of more things he would do to her. I have overheard this at practice in front of the team more than once.

59.     That Plaintiff also submitted a statement by Jennifer Hoffman, who

acted as a field medic for the Junior Varsity and Varsity Football teams and wife of

the former Varsity Football Coach.

60.     That Ms. Hoffman's statement reports the following harassment

engaged in by Defendant Hemgesberg:

(a)     That Defendant Hemgesberg would make statements to football players about giving their girlfriends' "mustache rides," slang for performing oral sex on the students' girlfriends who were minors;

(b)     That Defendant Hemgesberg would make statements to the players if he got his way with their girlfriends, they would never go back to the boys;

(c)     That Defendant Hemgesberg regularly harassed R.Z. about his mother, Plaintiff; for example, on a bus ride to a summer camp, Defendant Hemgesberg began making sexually explicit comments about things he would do to Plaintiff, making gestures towards his groin and tongue, requiring the coaching staff to yell at him to stop talking to the students that way;

(d)     That Defendant Hemgesberg made comments about T.B.'s girlfriend, O.H. and her body parts, stating she's got long skinny legs and a tight butt, but "she has no tits";

(e)     That students running track also complained when Defendant Hemgesberg was an assistant track coach that he would place his hand on the small of their back and then slide down to their butts, using the excuse that he was trying to help them with their "form";

(f)     That Defendant Hemgesberg made a statement to a female student who was of Italian ethnicity that he knew that her boyfriend was having "Italian" for dinner, making reference to her boyfriend performing oral sex on her; and

(g)     That Defendant Hemgesberg and his son had also harassed C.E. to date his son, requiring her to block them on all social media after they began creating fake accounts to continue their harassment.

61.     That Plaintiff also submitted a statement by Zana Weigold, a parent that had volunteered with the football teams.

62.     That Ms. Weigold reported harassment that occurred on October 14, 2023 at the football fundraiser.

63.     That Ms. Weigold reported that Defendant Hemgesberg was standing next to a twenty (20) year old young lady; Hemgesberg proceeded to place his arm around her shoulders, explained to how beautiful she was, and asked what he had to do to get her on the sidelines along with him, because she was so beautiful.

64.     That Ms. Weigold's statement further reflects concern that in light of Defendant Hemgesberg's statements to or about young women, it is very unsettling

as a mother of young daughters to have this individual teaching young ladies.

65.   That Plaintiff also submitted a statement from C.K., a student in the Swan Valley School District, whose boyfriend played on the football team.

66.   That C.K.'s statement reports the following acts of harassment engaged in by Defendant Hemgesberg:

     (a)    That on one occasion, Defendant Hemgesberg sat down next to C.K. at a practice and stated that he would rather sit next to her than coach the players;

     (b)    That on another occasion, Defendant Hemgesberg told her boyfriend and the coaching staff that he was going to make out with C.K. as he walked to his vehicle that was parked next to her vehicle as C.K. waited for her boyfriend;

     (c)    That on yet another occasion, Defendant Hemgesberg referred to C.K. as "hot," because she was from Swan Valley;

     (d)    That at the September 21, 2024 fundraiser, Defendant Hemgesberg made a fool of himself by putting his fingers on either side of his mouth and flicking his tongue in between, a gesture symbolizing performing oral sex; and

     (e)    That Defendant Hemgesberg was constantly making comments that made her uncomfortable, including comments about minor girls as well as football players' girlfriends and mothers.

67.   That Plaintiff also submitted a statement by Jeff Cox, Assistant Coach/Equipment Manager for Varsity Football.

68.   That Mr. Cox's statement reports the following acts of harassment engaged in by Defendant Hemgesberg:

     (a)    That Defendant Hemgesberg has made sexual comments about

football players' mothers, girlfriends, and sisters;

(b)    That on one occasion, a student who had graduated returned to volunteer and his girlfriend came to the practice; Defendant Hemgesberg walked over to her, put her arm around her, and stated, "You're from Swan Valley?  Swan Valley girls are hot; I've always had a thing for Swan Valley girls you could only imagine what I would do with them if I got the chance.  What do I have to do to get you on MY sidelines just to stand next to me."

(c)    That Defendant Hemgesberg has also made statements about players' mothers being "hot," have "perky tits," or "has a nice ass."

(d)    That Defendant Hemgesberg made similar comments about players' girlfriends.

69.    That the submitted statements demonstrate that Defendant Hemgesberg regularly spoke in a sexually explicit and vulgar manner regarding players' underage girlfriends, minor female students, and players' mothers.

70.    That Defendant Hemgesberg did not limit his sexual harassment to adults, but also sexually harassed underage girls.

71.    That most troubling, the statements report potential physical sexual harassment of underage female athletes.

72.    That on or about April 29, 2025, Mr. White wrote a response to Plaintiff's complaint, acknowledging receipt of the same, enclosing a copy of the School District's Title IX policy, and providing information regarding a Title IX investigation.

73.    That said letter further detailed that the School District was enacting the

following supportive measure:[1]

> Mutual no-contact order with [R.Z.] or [S.Z.], Keely Michalak's children, to the extent possible

74.    That on or about June 4, 2025, S.Z. came home from school and asked Plaintiff whether Defendant Hemgesberg was supposed to stay away from her.

75.    That when Plaintiff responded affirmatively, S.Z. reported that Defendant Hemgesberg does not stay away from her.

76.    That S.Z. proceeded to inform her mother that Defendant Hemgesberg was constantly coming into her classroom to pull students and she had caught him staring at her inside a classroom from the hallway.

77.    That it should be noted that S.Z. bears a strong resemblance of her mother and Defendant Hemgesberg's statements regarding Plaintiff and underage females along with the report that he had touched female students' backsides caused significant concern that Defendant Hemgesberg would be having similar thoughts about Plaintiff's daughter.

78.    That those concerns were only amplified by S.Z. noting Defendant

---

[1] "Supportive measures" is defined as "non-disciplinary, non-punitive individualized services offered as appropriate, as reasonably available, and without fee or charge to the complainant or the respondent before or after the filing of a formal complaint or where no formal complaint has been filed.  Such measures are designed to restore or preserve equal access to the recipient's education program or activity without unreasonably burdening the other party, including measures designed to protect the safety of all parties or the recipient's educational environment, or deter sexual harassment.    Supportive measures may include counseling, extensions of deadlines or other course-related adjustments, modifications of work or class schedules, campus escort services, mutual restrictions on contact between the parties, changes in work or housing locations, leaves of absence, increased security and monitoring of certain areas of the campus and other similar measures. . . . The Title IX Coordinator is responsible for coordinating the effective implementation of supportive measures." 34 C.F.R. § 106.30(a).

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

Hemgesberg would stare at her from the hallway.

79.    That on or about June 5, 2025, Plaintiff reported the ongoing violations of the no contact order to Principal White.

80.    That on or about June 6, 2025, Principal White responded to Plaintiff's email, noting, "I forwarded your concern to our school's attorney for guidance and will follow up with you when they respond."

81.    That on or about June 6, 2025, S.Z. came home from school experiencing a panic attack.

82.    That S.Z. reported to her mother that Defendant Hemgesberg had come into her classroom to ask the teacher if she needed an empty box, turned around, looked directly at S.Z., and gave her a smirk, demonstrating blatant disregard for the no contact order.

83.    That on or June 6, 2025, Plaintiff wrote Principal White regarding the blatant violation of the no contact order:

> While you are awaiting your attorney to tell you how to respond to me let me inform you what happened today right under your nose. My daughter came home in tears hyperventilating because Aaron walked into Mrs. Lafrance's room asked her if she needed a box then he turned around, looked directly at my daughter and smirked. I don't think this is funny in the least bit. That man is taunting me and my family and YOU are doing nothing about it! You said you were enacting a no contact but what have you done to actually enforce it? Why is he being allowed to be near my daughter? Why you are asking your attorney how to respond is beyond me. They don't walk those hallways everyday. You do! It's your responsibility to take care of my children and keep them safe when they are with you and you have failed

miserably to do so.  Your actions have caused my daughter stress, anxiety and a new found fear of grown men.  Not to mention the intolerable migraine she had after crying so hard and hyperventilating. I am beyond angry with how you have handled this situation.  Do better!

84.    That despite Plaintiff's multiple emails, Plaintiff did not receive a response to her June 6, 2025 email.

85.    That on or about June 9, 2025, Plaintiff forwarded her emails with Principal White to the Board of Education and Interim Superintendent Kettelhohn.

86.    That it soon became clear that St. Charles Community Schools had no intention of enforcing the no contact order and found Plaintiff's reports of sexual harassment to be annoying and inconvenient, which is consistent with the retaliation Plaintiff had experienced.

87.    That upon further inquiry, Superintendent Kettelhohn was extremely dismissive of the concern and the reasons why a no contact order was adopted in the first place.

88.    That in a June 24, 2025 email to Michael Goschka, Board member, Superintendent Kettelhohn stated:

I am not sure there was an actual agreement to keep a particular school employee away from her daughter.  I know Mr. White did try to keep this particular employee away from her daughter as much as possible. However this particular employee does have a job to do and is required to do it.  At no time would we put her daughter in danger.  Sometimes that job is to be pushed in with another teacher to help students out.  I hope that helps clear up some misunderstanding or miscommunication.

89.    That Superintendent Kettelhohn did not know if there was a no-contact

order in place, demonstrating Defendant School District's failure to implement and enforce the supportive measure it adopted.

90.    That on or about July 11, 2025, Plaintiff and R.Z. participated in interviews with Cathleen M. Dooley, an attorney with Thrun Law.

91.    That on or about August 19, 2025, Ms. Dooley prepared a memorandum regarding the "Evidence for Inspection and Review."

92.    That the Evidence Memo details the investigation, which involved interviews with Plaintiff and R.Z. on July 11, 2025, interview with Defendant Hemgesberg on July 15, 2025, interview with Ms. Hoffman on July 16, 2025, interview with J.L. on August 5, 2025, and interview with Stacie Karow on August 14, 2025.

93.    That Evidence Memo further reflects that interviews were allegedly requested of Jeff Cox and Zana Weigold; however, there was no response received to emails sent to both.

94.    That despite the statement that Ms. Weigold was contacted twice by email, Ms. Weigold has searched her emails and has no record of any attempted contact.

95.    That Mr. Cox also has reported receiving no emails.

96.    That the Evidence Memo also reflects that no contact information was available for C.K., C.E., and M.N., students and/or former students.

97.    That the memo states that the Title IX Coordinator did not know C.K.; however, the Evidence Memo notes that she is a student at Swan Valley.

98.    That the Evidence Memo also reflects that St. Charles Community Schools had no record of M.N., despite she was a former student.

99.    That instead of requesting contact information from Plaintiff, who provided these witnesses, the School District just ignored any information those witnesses may have.

100.    That on or about August 29, 2025, Plaintiff submitted a response to the Evidence Memo to Ms. Dooley.

101.    That in said response, Plaintiff pointed out numerous inaccuracies in Defendant Hemgesberg's interview summary, provided a copy of the text messages quoted above in paragraphs 12 and 13, submitted copies of the police reports, and copies of several communications.

102.    That importantly, Plaintiff provided an update on the continuing violations of the no contact order.

103.    That Plaintiff specifically reported:

Already 3 days into the school year my daughter has already had two run ins with Aaron.  She came home from school stating that at an assembly Aaron sat one row in front of her making her so uncomfortable.  Then later she was in the media center where she was again was having anxiety due to him being in the same room.  My daughter's friend snapped a picture of Aaron and my daughter in the same room together as proof he and the school are not taking this seriously.  Mr. White and Aaron are causing my daughter a great deal

of stress and anxiety.  So much so I have gone to the courthouse to file a restraining order.  I have not communicated with Mr. White this year regarding the no contact because Mr. White emailed me in June that he was waiting for the school's attorneys to tell him how to respond to my complaint.  So either Mr. White dropped the ball or Thrun law firm dropped the ball as I have had zero communication on the matter. Thankfully she came home and advised me that her teacher Ms. St. John advised her that she is very aware of what is going on and she will make sure Aaron does not enter into her classroom when [S.Z.] is in there. This situation has created a hostile learning environment for her.

104.    That Plaintiff also submitted a written statement by her daughter, S.Z.

105.    That S.Z.'s statement aptly summarizes her concerns:

At the end of the 2024-2025 school year, Mr. Hemgesberg made me feel very uncomfortable and still is.  He gives me very bad anxiety when he is anywhere around me.  He made very inappropriate comments about my mother and her body and there are other kids in the school that he has spoke inappropriately about as well.  One being my brother's ex girlfriend.  Since I look exactly the same as my mom and being around the same age that my brother's ex was when she had comments said about her by him makes me feel even worse.

106.    That despite being advise, yet again, that the School District had been repeatedly violating the no contact order and aware that said supportive measure was proving inadequate, St. Charles Community Schools failed to take any additional remedial action.

107.    That in fact, matters have only gotten worse.

108.    That on or about September 2, 2025, Plaintiff wrote Superintendent Ronald Stanley:

Please give me a call ASAP.  My daughter [S.Z.] has just messaged me due to the fact that Aaron Hemgesberg is in her first hour everyday.

There is a no contact order that the school put into place during the title IX investigation. This man is purposely tormenting my daughter and my family. I have attached the letter my daughter has written to the judge asking for a restraining order. I am going to the courthouse Friday to file the PPO paperwork with the courthouse. Mr. White and Aaron think this is a joke. My daughter and I are not laughing. There are multiple ways to keep him from being in the same room as her. This school has done nothing to do so. She is having extremely bad anxiety and his presence in her classrooms is creating a hostile learning environment for her. She is not learning as she is distracted and uneasy by his presence. Please remove this individual from her classrooms immediately. Please follow the no contact order your school district and attorneys put into place for my daughter's safety, mental health and to protect her learning environment.

109. That on or about September 3, 2025, Plaintiff obtained a written statement from M.N.

110. That M.N.'s statement reports the following acts of harassment engaged in by Defendant Hemgesberg:

    (a)    That M.N. witnessed unprofessional and inappropriate behavior from Defendant Hemgesberg primarily during the spring 2024 track season;

    (b)    That Defendant Hemgesberg's actions caused student athletes to skip practice to avoid "unwanted advances" by Defendant Hemgesberg;

    (c)    That after graduating from St. Charles and her freshman year of college, M.N. volunteered at a track practice; at the first practice she attended, "I took time to observe the norms at track practice, particularly with the throwers. To my shock and horror I witnessed not only improper coaching techniques but also improper and unnecessary hand placement on female athletes, ignoring male athletes. [Hemgesberg] to[ok] a special interest in 'guiding' the female throwers, by placing his hands on their arms, torso, and even lower back with sneaky finger touching

these girls on their butt.  In my 8 years as a track and field athlete there has never been a reason for a coach to touch me or any of my former teammates at any point!  The girls expressed that they were uncomfortable with his actions but they were repeatedly shut down and ignored."

(d)     "The first practice after prom [Hemgesberg] asked repeatedly to see the girls' dresses and after seeing their dresses he made several inappropriate remarks including 'you look so beautiful, if you were any older. . .' 'that dress holds you in all the right places," these would be inappropriate if said by any other man let alone someone such as a teacher and coach.  These remarks were also brought to the attention of the school and were ignored."

111.   That Defendant St. Charles Community Schools has failed to take remedial action to protect Plaintiff and her children from the ongoing sexual and retaliatory harassment.

112.   That Defendants' actions constitute sexual harassment in violation of 42 U.S.C. § 1983.

113.   That Defendants' actions constitute sexual harassment in violation of Article III of the Michigan Elliott-Larsen Civil Rights Act.

114.   That Defendants' actions constitute sexual harassment in violation of Article IV of the Michigan Elliott-Larsen Civil Rights Act.

115.   That Defendants' actions constitute retaliation in violation of the Michigan Elliott-Larsen Civil Rights Act.

116.   That Defendants' actions constitute sexual harassment in violation of the Michigan Equal Accommodations Act.

117.   That as direct and proximate result of Defendant's unlawful actions, Plaintiff has sustained and will continue to sustain economic damages, including, but not limited to, out-of-pocket expenses, as well as non-economic damages, including, but not limited to, emotional distress, mental anguish, shock, fright, embarrassment, humiliation, nervousness, anxiety, depression, disruption of lifestyle, and denial of social pleasures.

118.   That Plaintiff hereby claims the costs of this action, including reasonable attorney fees and expert fees, pursuant to 42 U.S.C. § 1988.

119.   That Plaintiff hereby claims the costs of the litigation, including reasonable attorney fees and witness fees, pursuant to M.C.L. § 37.2801 and M.C.L. § 37.2802.

120.   That Plaintiff hereby claims treble damages pursuant to M.C.L. § 750.147.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in addition to costs, interest, and attorney fees along with any and all legal and/or equitable relief this Court deems just.

## COUNT I – SEXUAL HARASSMENT IN VIOLATION OF 42 U.S.C. § 1983

121.   That Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 120 of her Common Allegations, word for word

and paragraph for paragraph, as if fully restated herein.

122.   That 42 U.S.C. § 1983 provides that every person who, under the color of State law, deprives a citizen of the United States any rights or privileges secured by federal laws shall be liable to the injured party at law or in equity.

123.   That citizens have a constitutional right under the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution to be free from sexual harassment engaged in by public employees. *See Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988).

124.   That at all times material hereto, Plaintiff and her minor were members of a protected class by virtue of their sex.

125.   That Plaintiff and her minor were subjected to unwelcomed conduct or communication of an inherently sexual nature.

126.   That said sexual harassment was based upon Plaintiff's sex.

127.   That said sexual harassment had the effect of unreasonably interfering with Plaintiff's involvement in her minor's education and her minor's education and created an intimidating, hostile, and offensive educational environment that affected the psychological well-being of Plaintiff and her minor.

128.   That Defendant had actual knowledge of said sexual harassment.

129.   That Defendant has failed to take prompt and appropriate remedial action.

130. That Defendant has failed to implement the remedial action it claimed it would take.

131. That Defendant has acted with a deliberate indifference to the violation of Plaintiff's and her minor's rights.

132. That Defendant's failures to remediate said harassment serves no legitimate, pedagogical justification.

133. That Defendant's actions are not aimed at meeting any legitimate objective.

134. That at all times material hereto, Defendant's employees acted pursuant to a policy or custom of Defendant.

135. That Defendant's actions were taken by individuals to whom final decision-making and/or policy-making authority had been delegated.

136. That Defendant had a policy of inadequate training and/or supervision.

137. That Plaintiff's right to be free from sexual harassment was clearly established.

138. That Defendants' actions constitute sexual harassment in violation of 42 U.S.C. § 1983.

139. That as direct and proximate result of Defendant's unlawful actions, Plaintiff has sustained and will continue to sustain economic damages, including, but not limited to, out-of-pocket expenses, as well as non-economic damages,

including, but not limited to, emotional distress, mental anguish, shock, fright, embarrassment, humiliation, nervousness, anxiety, depression, disruption of lifestyle, and denial of social pleasures.

140.   That Plaintiff hereby claims the costs of this action, including reasonable attorney fees and expert fees, pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in addition to costs, interest, and attorney fees along with any and all legal and/or equitable relief this Court deems just.

## COUNT II – SEXUAL HARASSMENT IN VIOLATION OF ARTICLE III OF THE MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT

141.   That Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 120 of her Common Allegations and paragraphs 121 through 139 of Count I, word for word and paragraph for paragraph, as if fully restated herein.

142.   That the Michigan Elliott-Larsen Civil Rights Act makes it unlawful for a person to deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation or public service, because of sex.  M.C.L. § 37.2302(a).

143.   That under the Act, "[d]iscrimination because of sex includes sexual harassment."  M.C.L. § 37.2103(k).

144.    That "sexual harassment" includes unwelcomed verbal or physical conduct or communication of a sexual nature where the conduct or communication has the purpose or effect of substantially interfering with an individual's enjoyment of a public accommodation or public service or creating an intimidating, hostile, or offensive public accommodations or public services environment.    M.C.L. § 37.2103(k)(*iii*).

145.    That at all times material hereto, Defendant was a "place of public accommodation" and a "public service" as defined by the Act.  M.C.L. § 37.2301(a)-(b).

146.    That at all times material hereto, Plaintiff and her minor were and are members of a protected class by virtue of their sex.

147.     That Plaintiff and her minor were subjected to unwelcomed conduct or communication of an inherently sexual nature.

148.    That said sexual harassment was based upon Plaintiff's sex.

149.    That said sexual harassment had the effect of unreasonably interfering with Plaintiff and her minor's enjoyment of a public accommodation or public service and/or created an intimidating, hostile, or offensive public accommodations or public services environment.

150.    That Defendant had actual knowledge of said sexual harassment.

151.    That Defendant has failed to take prompt and appropriate remedial

action.

152.   That Defendant has failed to implement the remedial action it claimed it would take.

153.   That Defendant has acted with a deliberate indifference to the violation of Plaintiff's and her minor's rights.

154.   That Defendant's failures to remediate said harassment serves no legitimate, pedagogical justification.

155.   That Defendant's actions are not aimed at meeting any legitimate objective.

156.   That Defendants' actions constitute sexual harassment in violation of Article III of the Michigan Elliott-Larsen Civil Rights Act.

157.   That as direct and proximate result of Defendant's unlawful actions, Plaintiff has sustained and will continue to sustain economic damages, including, but not limited to, out-of-pocket expenses, as well as non-economic damages, including, but not limited to, emotional distress, mental anguish, shock, fright, embarrassment, humiliation, nervousness, anxiety, depression, disruption of lifestyle, and denial of social pleasures.

158.   That Plaintiff hereby claims the costs of the litigation, including reasonable attorney fees and witness fees, pursuant to M.C.L. § 37.2801 and M.C.L. § 37.2802.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in addition to costs, interest, and attorney fees along with any and all legal and/or equitable relief this Court deems just.

## COUNT III – SEXUAL HARASSMENT IN VIOLATION OF ARTICLE IV OF THE MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT

159. That Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 120 of her Common Allegations, paragraphs 121 through 139 of Count I, and paragraphs 140 through 158 of Count II, word for word and paragraph for paragraph, as if fully restated herein.

160. That the Michigan Elliott-Larsen Civil Rights Act makes it unlawful for an educational institution to discriminate against an individual in the full utilization of or benefit from the institution, or the services, activities, or programs provided by the institution or otherwise discriminate against an individual enrolled as a student in the terms, conditions, or privileges of the institution, because of sex. M.C.L. § 37.2402(a)-(b).

161. That under the Act, "[d]iscrimination because of sex includes sexual harassment." M.C.L. § 37.2103(k).

162. That "sexual harassment" includes unwelcomed verbal or physical conduct or communication of a sexual nature where the conduct or communication has the purpose or effect of substantially interfering with an individual's education

or creating an intimidating, hostile, or offensive educational environment.  M.C.L. §

37.2103(k)(*iii*).

163.   That at all times material hereto, Defendant was and is an "educational

institution" as defined by the Act.  M.C.L. § 37.2401.

164.   That at all times material hereto, Plaintiff's minor was and is a member

of a protected class by virtue of his sex.

165.   That Plaintiff's minor was subjected to unwelcomed conduct or

communication of an inherently sexual nature.

166.   That said sexual harassment was based upon Plaintiff's sex.

167.   That said sexual harassment had the effect of unreasonably interfering

with Plaintiff's minor's education and created an intimidating, hostile, and offensive

educational environment.

168.   That Defendant had actual knowledge of said sexual harassment.

169.   That Defendant has failed to take prompt and appropriate remedial

action.

170.   That Defendant has failed to implement the remedial action it claimed

it would take.

171.   That Defendant has acted with a deliberate indifference to the violation

of Plaintiff's and her minor's rights.

172.   That Defendant's failures to remediate said harassment serves no

legitimate, pedagogical justification.

173.   That Defendant's actions are not aimed at meeting any legitimate objective.

174.   That Defendants' actions constitute sexual harassment in violation of Article IV of the Michigan Elliott-Larsen Civil Rights Act.

175.   That as direct and proximate result of Defendant's unlawful actions, Plaintiff has sustained and will continue to sustain economic damages, including, but not limited to, out-of-pocket expenses, as well as non-economic damages, including, but not limited to, emotional distress, mental anguish, shock, fright, embarrassment, humiliation, nervousness, anxiety, depression, disruption of lifestyle, and denial of social pleasures.

176.   That Plaintiff hereby claims the costs of the litigation, including reasonable attorney fees and witness fees, pursuant to M.C.L. § 37.2801 and M.C.L. § 37.2802.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in addition to costs, interest, and attorney fees along with any and all legal and/or equitable relief this Court deems just.

## COUNT IV – SEXUAL HARASSMENT IN VIOLATION OF THE MICHIGAN EQUAL ACCOMMODATIONS ACT

177.   That Plaintiff hereby incorporates by reference the allegations

contained in paragraphs 1 through 120 of her Common Allegations, paragraphs 121 through 139 of Count I, paragraphs 140 through 158 of Count II, and paragraphs 159 through 176 of Count III, word for word and paragraph for paragraph, as if fully restated herein.

178. That M.C.L. § 750.146 provides that all persons with the jurisdiction of the State of Michigan shall be entitled to the full and equal accommodations, advantages, facilities, and privileges of public educational institutions, subject only to the conditions and limitations established by law and applicable alike to all citizens and to all citizens alike.

179. That M.C.L. § 750.147 provides:

> Any person being an owner, lessee, proprietor, manager, superintendent, agent or employee of any such place who shall directly or indirectly refuse, withhold from or deny to any person any of the accommodations, advantages, facilities and privileges thereof . . . on account of . . . sex . . . an every person being an owner, lessee, proprietor, manager, superintendent, agent or employee of any such place, and who violates any of the provisions of this section, shall be liable to the injured person, in treble damages sustained, to be recovered in a civil action. . . .

180. That at all times material hereto, Defendant was and is a "public educational institution" or otherwise a "public accommodation."

181. That Defendant denied Plaintiff and her minor the accommodations, advantages, facilities and privileges of its educational institution and public accommodation by permitting and allowing Plaintiff and her minor to be sexually

harassed.

182.    That Plaintiff and her minor were subjected to unwelcomed conduct or communication of an inherently sexual nature.

183.    That said sexual harassment was based upon Plaintiff's sex.

184.    That said sexual harassment had the effect of unreasonably interfering with Plaintiff's involvement in her minor's education and her minor's education and created an intimidating, hostile, and offensive educational environment that affected the psychological well-being of Plaintiff and her minor.

185.    That Defendant had actual knowledge of said sexual harassment.

186.    That Defendant has failed to take prompt and appropriate remedial action.

187.    That Defendant has failed to implement the remedial action it claimed it would take.

188.    That Defendant has acted with a deliberate indifference to the violation of Plaintiff's and her minor's rights.

189.    That Defendant's failures to remediate said harassment serves no legitimate, pedagogical justification.

190.    That Defendant's actions are not aimed at meeting any legitimate objective.

191.    That Defendants' actions constitute sexual harassment in violation of

THE MASTROMARCO FIRM | 1024 N. Michigan Avenue | Saginaw, Michigan 48602 | (989) 752-1414

the Michigan Equal Accommodations Act.

192.   That as direct and proximate result of Defendant's unlawful actions, Plaintiff has sustained and will continue to sustain economic damages, including, but not limited to, out-of-pocket expenses, as well as non-economic damages, including, but not limited to, emotional distress, mental anguish, shock, fright, embarrassment, humiliation, nervousness, anxiety, depression, disruption of lifestyle, and denial of social pleasures.

193.   That Plaintiff hereby claims treble damages pursuant to M.C.L. § 750.147.

194.   That Plaintiff hereby claims any and all costs, interest, and attorney fees allowable pursuant to statute, court rule, and/or common law.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in addition to costs, interest, and attorney fees along with any and all legal and/or equitable relief this Court deems just.

Respectfully submitted,
THE MASTROMARCO FIRM

Dated: <u>September 26, 2025</u>    By:    <u>*/s/ Victor J. Mastromarco, Jr.*</u>
VICTOR J. MASTROMARCO, JR. (P34564)
KEVIN J. KELLY (P74546)
Attorneys for Plaintiff
1024 N. Michigan Avenue
Saginaw, Michigan 48602
(989) 752-1414

## <u>DEMAND FOR TRIAL BY JURY</u>

NOW COMES Plaintiff, KEELY MICHALAK, Individually and as Next Friend of R.Z., a minor, by and through her attorneys, THE MASTROMARCO FIRM, and hereby demands a trial by jury on all the above issues, unless otherwise expressly waived.

Respectfully submitted,
THE MASTROMARCO FIRM

Dated: <u>September 26, 2025</u>   By:   */s/ Victor J. Mastromarco, Jr.*

VICTOR J. MASTROMARCO, JR. (P34564)
KEVIN J. KELLY (P74546)
Attorneys for Plaintiff
1024 N. Michigan Avenue
Saginaw, Michigan 48602
(989) 752-1414